# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Herman Staple, :  
      Appellant :  
  :  
    v. : No. 804 C.D. 2019
  : Submitted: December 20, 2019
Supt. Garmon, Keri Moore, Nicki Paul, :  
Paul Blaylock, Lt. James, C.O. Barlett, :  
and John Doe :  

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT           FILED: May 1, 2020

Herman Staple, an inmate representing himself, appeals an order of the Court of Common Pleas of Centre County (trial court) that dismissed his civil complaint against prison employees after Staple failed to pay the required filing fee. On appeal, Staple contends that the trial court erred in revoking his *in forma pauperis* status under the Prison Litigation Reform Act (Act)[1] by reason of his history of frivolous litigation. Staple argues that the trial court erred in dismissing his complaint. For the following reasons, we affirm.

On October 16, 2018, Staple initiated a civil action against several employees of the Department of Corrections (Department Employees) who work at the State Correctional Institution at Rockview, where he is an inmate. His complaint alleged that Department Employees took personal property and money from him in violation of the Fifth Amendment of the United States Constitution and Article I,

---

[1] 42 Pa. C.S. §§6601-6608.

Sections 8 and 9 of the Pennsylvania Constitution.[2]  The complaint also alleged conversion, fraudulent representation and negligence, and requested a writ of replevin.  On October 29, 2018, the trial court granted Staple *in forma pauperis* status.

On January 10, 2019, Department Employees filed a motion to revoke Staple's *in forma pauperis* status pursuant to Section 6602(f) of the Act, 42 Pa. C.S. §6602(f).[3]  Section 6602(f) is commonly referred to as the "three strikes rule" and

---

[2] The Fifth Amendment provides, in relevant part:

> No person shall … be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend V.  Article I, Section 8 of the Pennsylvania Constitution reads:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. I, §8.  Article I, Section 9 provides, in part:

> In all criminal prosecutions the accused … cannot be … deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.

PA. CONST. art. I, §9.

[3] Section 6602(f) provides:

> (f) Abusive litigation.--If the prisoner has previously filed prison conditions litigation and:
>
> > (1) three or more of these prior civil actions have been dismissed pursuant to subsection (e)(2); or
> >
> > (2) the prisoner has previously filed prison conditions litigation against a person named as a defendant in the instant action or a person serving in the same official capacity as a named defendant and a court made a finding that the prior action was filed in bad faith or that the prisoner knowingly presented false evidence or testimony at a hearing or trial;
>
> the court may dismiss the action.  The court shall not, however, dismiss a request for preliminary injunctive relief or a temporary

2

allows a court to revoke a prisoner's *in forma pauperis* status if he has filed three or more civil actions involving prison conditions which were dismissed as frivolous or malicious or for failure to state a claim. *Brown v. Pennsylvania Department of Corrections*, 58 A.3d 118, 121 (Pa. Cmwlth. 2012). The trial court granted Department Employees' motion on February 27, 2019, explaining that:

> [Staple] has filed three or more prior civil actions that have been dismissed as frivolous or malicious or for failure to state a claim. 42 Pa. C.S. [§]6602(e)-(f). [Staple's *in forma pauperis*] status is therefore revoked due to his past abusive litigation. [Staple's] Civil Complaint shall be dismissed unless [Staple] pays the entire applicable filing fee within thirty (30) days of today's date.

Original Record (O.R.) Item No. 17.

On April 8, 2019, Staple requested that the trial court modify its February 27, 2019, order. Staple asserted that it was impossible for him to pay the entire filing fee in 30 days given the average monthly balance of his inmate account. Staple asked the trial court to accept a check for partial payment and allow him to make monthly payments towards the balance. On May 16, 2019, the trial court denied this request and dismissed Staple's complaint because he had failed to pay the entire filing fee. Staple then appealed to this Court.

In its Rule 1925(a) opinion, the trial court addressed Staple's arguments that it erred by: (1) revoking Staple's *in forma pauperis* status because it was aware of his inability to pay the filing fee; (2) refusing to accept his partial payment; and (3) dismissing his complaint for financial reasons, which denied him access to the courts. The trial court rejected these arguments, explaining that Staple's *in forma*

---

restraining order which makes a credible allegation that the prisoner is in imminent danger of serious bodily injury.

42 Pa. C.S. §6602(f).

3

*pauperis* status was revoked because three of his prior prison conditions litigation actions were dismissed as frivolous or malicious or for failure to state a claim. The trial court noted that it had given Staple reasonable time to pay the filing fee and proceed with his complaint, but he failed to do so. Given the "three strikes rule" and Staple's failure to pay, the trial court explained that it did not abuse its discretion by revoking Staple's *in forma pauperis* status under Section 6602(f) of the Act, 42 Pa. C.S. §6602(f), and dismissing his complaint for failure to pay the filing fee.

On appeal,[4] Staple argues that the trial court erred by imposing a 30-day deadline for him to pay the entire filing fee. More specifically, he contends that the 30-day deadline was unreasonable because the trial court revoked his *in forma pauperis* status with knowledge of his inability to pay the filing fee. Further, Staple argues that he should have been permitted to make partial payments pursuant to Section 6602(b) and (c) of the Act, 42 Pa. C.S. §6602(b), (c).

Before we address the merits of these arguments, we first consider whether his appeal was timely filed.[5] Our appellate rules provide that "[a]n appeal permitted by law as of right from a lower court to an appellate court shall be taken by filing a notice of appeal with the clerk of the lower court" within "30 days after the entry of the order from which the appeal is taken." PA. R.A.P. 902, 903. Pennsylvania Rule of Appellate Procedure 905(a)(3) assists the court in determining the date an appeal is filed. It provides that "[u]pon receipt of the notice of appeal, the clerk shall immediately stamp it with the date of receipt, and that date shall

---

[4] In reviewing the trial court's decision, we must determine whether constitutional rights have been violated, the trial court abused its discretion, or the trial court committed an error of law. *Bailey v. Wakefield*, 933 A.2d 1081, 1083 n.4 (Pa. Cmwlth. 2007).

[5] On September 16, 2019, this Court directed the parties to address the timeliness of Staple's appeal in their briefs.

constitute the date when the appeal was taken, which date shall be shown on the docket." PA. R.A.P. 905(a)(3).

However, recognizing the special circumstances of a *pro se* appellant who is incarcerated at the time of his appeal, our state Supreme Court has adopted the "prisoner mailbox rule" to determine when a prisoner's appeal is filed. *Commonwealth v. Jones*, 700 A.2d 423, 425 (Pa. 1997).[6] "At the heart of the 'prisoner mailbox rule' are the constitutional notions of due process and fundamental fairness." *Pettibone v. Pennsylvania Board of Probation and Parole*, 782 A.2d 605, 608 (Pa. Cmwlth. 2001). Thus, under the prisoner mailbox rule, a prisoner's *pro se* appeal is deemed filed at the time it is given to prison officials or put in the prison mailbox. *Jones*, 700 A.2d at 425. The *pro se* prisoner has the burden of showing that he or she, in fact, delivered the appeal within the appropriate time period. *Id.* at 426. In support, the *pro se* prisoner may present evidence like a certificate of

---

[6] The United State Supreme Court has explained the concepts behind the rule:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them.

*Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

5

mailing, an affidavit or a cash slip evincing the deduction from an inmate's account for the mailing. *Id.* However, "[p]roof is not limited to the above examples and [the Court is] inclined to accept any reasonably verifiable evidence of the date that the prisoner deposits the appeal with the prison authorities." *Id.*

Here, the trial court filed its order dismissing Staple's complaint on May 16, 2019. To be considered timely, Staple had to file his notice of appeal on or before June 17, 2019. It was docketed on June 21, 2019. Staple asserts that he placed the notice of appeal with the certificate of service, both dated June 16, 2019, in the prison mailbox on June 17, 2019. Although the record contains the envelope in which Staple's notice of appeal was mailed, the envelope is not postmarked. When there are factual disputes regarding timeliness, this Court may remand for an evidentiary hearing. *Jones*, 700 A.2d at 426 n.3. "Where, however, the opposing party does not challenge the timeliness of the appeal and the prisoner's assertion of timeliness is plausible, [the Court] may find the appeal timely without remand." *Commonwealth v. Cooper*, 710 A.2d 76, 79 (Pa. Super. 1998) (citing *Jones*, 700 A.2d at 426 n.3).[7] Department Employees "concede that the appeal is likely timely

---

[7] This Court applied this reasoning in *Polite v. Philadelphia District Attorney's Office* (Pa. Cmwlth., No. 548 C.D. 2019, filed September 23, 2019) (unreported), where an inmate requested documents under the Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104. The trial court there disposed of his appeal on November 28, 2018, but the inmate's appeal of the trial court order was not filed until January 11, 2019. Although the inmate's appeal was filed well beyond the 30-day period, we applied the prisoner mailbox rule.

The inmate's notice of appeal and certificate of service were dated December 16, 2018. We stated that "assuming some delay occurred … with respect to the mail, whether it be within the prison system or postal delivery in general, it is factually plausible that [the inmate] delivered the notice of appeal to prison officials or placed it in the prison mailbox on or shortly after this date and, therefore, filed a timely notice of appeal." *Polite*, slip op. at 2 n.2. Because the District Attorney had not challenged the timeliness of the inmate's appeal, we considered the merits of his appeal.

6

due to the prison mailbox rule." Department Employees Brief at 5. Under these circumstances, we will assume that Staple's appeal was timely filed.

Turning to the merits, we first address whether the trial court's imposition of a 30-day deadline to pay the filing fee was unreasonable given that the court revoked Staple's *in forma pauperis* status. When a prisoner's *in forma pauperis* status is revoked, a court may dismiss the prisoner's complaint if the prisoner thereafter fails to pay the filing fees and costs associated with the litigation. *Richardson v. Department of Corrections*, 97 A.3d 430, 432 (Pa. Cmwlth. 2014); *see also Lopez v. Haywood*, 41 A.3d 184, 188 (Pa. Cmwlth. 2012) (trial court should give prisoners a reasonable opportunity to proceed with already-begun prison conditions litigation by paying filing fees and costs before dismissing the matter in its entirety).

When the trial court revoked Staple's *in forma pauperis* status on February 27, 2019, it gave him 30 days to pay the filing fee. Staple contends that the 30-day deadline was unreasonable. Significantly, however, the trial court did not dismiss Staple's complaint until 79 days later on May 16, 2019. Staple does not acknowledge the extra time he was allowed or explain why he could not pay the fee in 79 days. We reject Staple's argument that the trial court abused its discretion in getting a 30-day deadline for paying the filing fee.

Next, we address Staple's argument that the trial court erred by not allowing him to make partial payments. In making this argument, Staple relies on Section 6602(b) and (c) of the Act, which reads, in part:

> (b)   Partial filing fees.--
>
> > (1)   The court may grant in forma pauperis status to excuse the prisoner from paying the full filing fee prior to the initiation of the action or appeal. Where

in forma pauperis status is granted, the court shall order the prisoner to pay the full amount of the filing fee and shall assess and, when funds exist, collect a full or partial payment of the filing fee which shall be the greater of the following:

(i) The average monthly deposits to the prisoner's account.

(ii) The average highest monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the complaint or notice of appeal requiring the payment of a fee.

\* \* \*

(c) Payment of filing fees.**--**Following payment of an initial partial filing fee, the prisoner shall make monthly payments of 20% of the preceding month's income credited to the prisoner's account. The prison having custody of the prisoner shall deduct payments from the prisoner's account when the prisoner's account balance exceeds $10 until the filing fees are paid in full.

42 Pa. C.S. §6602(b) and (c).

In *Payne v. Department of Corrections*, 871 A.2d 795 (Pa. 2005), our Supreme Court held that the above-quoted subsections are unconstitutional. In *Payne*, prisoners challenged Section 6602(a) through (c) of the Judicial Code as violative of the Supreme Court's exclusive rulemaking authority under Article V, Section 10(c) of the Pennsylvania Constitution.[8] More specifically, the prisoners

_____

[8] Article V, Section 10(c) provides, in relevant part:

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, … if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of

argued that the subsections contradicted Rule 240(f) of the Pennsylvania Rules of Civil Procedure, which states:

> A party permitted to proceed *in forma pauperis* shall not be required to
>
> > (1) pay any cost or fee imposed or authorized by Act of Assembly or general rule which is payable to any court or prothonotary or any public officer or employee, or
> >
> > (2) post bond or other security for costs as a condition for commencing an action or taking an appeal.

PA. R.C.P. No. 240(f). The Pennsylvania Supreme Court explained that Section 6602 created a procedure whereby a prisoner with *in forma pauperis* status could be required to pay partial court costs. The Court concluded that

> [s]uch edict directly conflicts with Rule 240[(f)], which provides that a party who has been granted *in forma pauperis* status **shall not** be required to pay **any costs** imposed by statute or local rule. PA. R.C.P. [No.] 240[(f)] (emphasis added). The practical effect of Section 6602 is to invalidate a judicial determination that an individual may proceed with the litigation without paying the costs incident thereto. The conflict between procedural pronouncements of this Court and the Legislature in this regard is unmistakable.

*Payne*, 871 A.2d at 807.

In light of the Supreme Court's holding in *Payne*, the trial court could not have fashioned a partial payment scheme as contemplated by Staple. In any

---

limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

PA. CONST. art. V, §10(c).

9

event, subsections (b) and (c) would have required that Staple have *in forma pauperis* status to avail himself of their provisions. Staple would have been ineligible because his *in forma pauperis* status was revoked under the three strikes rule of Section 6602(f) of the Act.

For all of the foregoing reasons, we affirm the trial court's dismissal of Staple's complaint.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Herman Staple, : 
          Appellant : 
  : 
     v. : No. 804 C.D. 2019
  : 
Supt. Garmon, Keri Moore, Nicki Paul, : 
Paul Blaylock, Lt. James, C.O. Barlett, : 
and John Doe : 

# **O R D E R**

AND NOW, this 1st day of May, 2020, the order of the Court of Common Pleas of Centre County dated May 16, 2019, in the above-captioned matter is AFFIRMED.

_____

MARY HANNAH LEAVITT, President Judge